Ruffin, Chief Justice.
 

 The securities within the purview of the act of 1809,
 
 {Rev. c.
 
 770,) “ to prevent the circulation of small promissory notes or due-bills,” are such notes or bills for a less sum than ten shillings, as are “ intended to pass current as a representative of, or a substitute for money.” The subsequent act of 1816,
 
 (Rev. c.
 
 900,) is supplemental to the former, as declared in its title; and the preamble and also the enactments render it manifest that the latter statute is, as respects due-bills, relative to that which preceded it. Though in itself imperfectly expressed, it is obvious it did not mean to prohibit a person from giving a note or due-bill for a real debt, or to prohibit the payee or holder from assigning and passing such a note, as other negotiable instruments. Indeed, the second section uses the words,
 
 “
 
 in circulation;” from which and the enactments and recitals, generally, enough is seen to satisfy us, that the species of security, called due-bills therein, and intended and expected to be suppressed by the penalties, in addition to “ those of the act of 1809, and by the “ further remedy” of indictment, is the same which is described in the act of 1809. The scope of both acts, taken together, or of the latter, construed in reference to the former, is to make it an indictable offence to issue, pass or receive notes, checks or due-bills for small sums, to
 
 *557
 
 be used as change or as a part of the circulating medium instead of coin, or such paper as the state had authorized or might authorize. The intent that a note issued should so pass current, as a substitute for money, or that in fact it was issued, and passed as such substitute, is therefore, an essential ingredient of the offence; and must be averred in the indictment, and proved on the trial.
 

 Neither the evidence on the trial, nor the instruction to the jury, is in conformity with this construction of the statute; and consequently, the judgment is deemed erroneous by the Court. It is possible that the inspection of the instrument itself, might have been sufficient to enable a jury to infer the intention, as if it were an impression from a plate, with vignettes and numbers, or the like, thus indicating that the particular paper, was one of a numerous series, issued or about to be issued. But no circumstance of the sort is stated in the case; and for aught that appears, this may have been the only paper issued or contemplated, and been given to some person for an existing debt, and without any purpose that it should be put into circulation as, or for money. If there was such a purpose, it is susceptible of easy proof, by showing that many such papers had actually been issued by the defendant,and were circulated with his privity or in his vicinity; which would denote the intent, in the same manner as it has been held that the possession of a large quantity of base money unaccounted for, is evidence of an intention to utter it. But, whatever the evidence might have been on the trial, the verdict could not stand, because the Court excluded all inquiry into the intention, and directed a conviction upon evidence of the issuing simply of this single note or bill.
 

 The disposition of the verdict renders it unnecessary to consider the motion in arrest of judgment. Yet it may be remarked, that for the reason, which in the opinion of the Court renders the instruction to the jury erroneous, the indictment is also defective. It is proper, however, that the Court should not leave in doubt, the opinion entertained upon the objection in arrest, which is stated in the record; namely, that the statute is unconstitutional. If an act of which the object and operation is so very salutary,
 
 *558
 
 were"in violation of the Constitution, it would be the source of sincere regret. But the Court is at a loss to conjecture on what ground the position is taken. It is, and must be, an attribute of every government, in some department, to prescribe and to regulate the currency; to p'rotect the community, from that which is spurious or worthless, whether it be of coin or paper; and to prohibit the making of such contracts, as are contrary to good morals, or contravene public policy; and there is no provision of our own Constitution, or that of the United States, in restraint of such action of the legislature, as may be directed against the fraud and swindling which would be prevalent, if every person at his will could throw into circulation paper trash of this kind.
 

 Per Curiam. Judgment reversed.